## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HOLLIE WOLF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-23-00754-PRW |
| | ) |
| KUM & GO, L.C., | ) |
| | ) |
| Defendant. | ) |

### ORDER

Before the Court is Defendant Kum & Go, L.C.'s ("Kum & Go") Motion for Summary Judgment (Dkt. 35), Plaintiff Hollie Wolf's response (Dkt. 39), and Kum & Go's reply (Dkt. 61). For the reasons explained below, the Court **GRANTS** Kum & Go's motion.

### *Background*

On April 27, 2022, Kum & Go hired Hollie Wolf as a part-time store associate at Store 880 in Lone Chimney, Oklahoma. On July 5, 2022, while Ms. Wolf was working at Kum & Go Store 880, she failed a "BARS sting" in which a third-party contractor working with Kum & Go sent a secret shopper to the store to attempt to purchase age-restricted items. Ms. Wolf sold tobacco products to the secret shopper without asking for his identification, and her supervisor Lisa Butts verbally counseled her regarding the incident.

On July 12, 2022, Ms. Wolf texted her supervisors Kevin Geen and Lisa Butts, stating:

1

> Sorry for the short notice but I won't be returning to work. [I] absolutely love the job itself, I just don't feel like I fit in there and I'm not comfortable there. [T]he things Kevin says to me are absolutely sick, especially about me and my boyfriend. Call me sensitive or "can't take a joke" or whatever, but it's truly disgusting. [I] also feel like I have to constantly walk on eggshells around Lisa, I literally can not with her. I'm always doing something wrong when I'm trying my best and I just can't take all of the negativity and the weird vibes anymore. Again, sorry for the short notice and I wish you and y'all's team the best.[1]

True to her word, Ms. Wolf did not return to work at Kum & Go. On July 14, 2022, Ms. Wolf attempted to text Kum & Go's District Manager, Jeramy Bollinger, to report inappropriate conduct by Mr. Geen. However, Mr. Bollinger never received the text message because Ms. Wolf sent it to a Kum & Go landline number. On July 15, 2022, Ms. Wolf called Kum & Go's Human Resources ("HR") department and reported Mr. Geen's alleged inappropriate conduct to HR representative Michelle Tilson. Specifically, Ms. Wolf reported that while she was working at Kum & Go, an inmate walked into the store accompanied by officers, and Mr. Geen said that the inmate was Ms. Wolf's boyfriend. Mr. Geen then asked her why she didn't have a boyfriend, and Ms. Wolf responded that she did have a boyfriend and that he attended technical school for film. Mr. Geen asked if her boyfriend made pornographic films and if Ms. Wolf starred in them. She reported that Mr. Geen asked her the next day at work if she had made any new productions. She also reported that Mr. Geen offered her a ride home, which she refused, asked to hold her hand,

---

[1] Def.'s Mot. (Dkt. 35) Ex. 8.

which she also refused, and acted childishly by touching her face and tugging on her ponytail.[2]

The following week, Mr. Bollinger interviewed Mr. Geen twice regarding the alleged inappropriate conduct, and Mr. Geen denied Ms. Wolf's allegations. On July 22, 2022, Mr. Bollinger called Ms. Wolf to inform her that Kum & Go could not confirm her allegations against Mr. Geen, but she did not answer her phone. Also, on July 20, 2022, Mr. Geen entered a disciplinary notice in Ms. Wolf's personnel file regarding her BARS sting failure.

On July 21, 2023, Ms. Wolf sued Kum & Go in Payne County District Court, alleging sexual harassment and hostile work environment under Title VII and the Oklahoma Anti-Discrimination Act ("OADA"). Kum & Go removed the action to this Court and now seeks summary judgment on all of Ms. Wolf's claims.

## *Legal Standard*

Federal Rule of Civil Procedure 56(a) requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

---

[2] Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. 39) describes an incident in which "Geen told [Ms. Wolf], as a part of a conversation he was having with another older, male customer, that Ms. Wolf was their girlfriend and that they would be meeting up with her later that night, suggesting they would both meet[] up with her for sex." Pl.'s Resp. (Dkt. 39), ¶16. Although Ms. Wolf testified in deposition that this conversation occurred, she did not state that Mr. Geen was suggesting they would meet up with her for sex. Instead, Ms. Wolf's counsel interjected during the deposition that "they were implying that they wanted to have sex with her at the same time, at night." *Id.* at Ex. 1, 82:11–12. It's undisputed that Ms. Wolf did not include this incident in her report to Ms. Tilson.

the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the Court does not weigh the evidence and determine the truth of the matter asserted, but instead determines only whether there is a genuine dispute for trial before the fact-finder.[3] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[4] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[5] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[6]

If the movant carries its initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[7] The nonmovant does not meet its burden by

---

[3] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[5] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[6] *Anderson*, 477 U.S. at 248; *Adler*, 144 F.3d at 670.

[7] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322.

"simply show[ing] there is some metaphysical doubt as to the material facts"[8] or theorizing a plausible scenario in support of its claims. Instead, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[9] And as the Supreme Court explained, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment,"[10] since "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"[11] Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[12]

*Discussion*

Kum & Go asks the Court to grant summary judgment in its favor on all of Ms. Wolf's claims. Ms. Wolf's Amended Petition (Dkt. 1, Ex. 3) purports to state two claims for relief: a sexual harassment claim brought under Title VII and the OADA and a hostile work environment claim. But because Courts do not distinguish between sexual harassment

---

[8] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[9] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52); *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993).

[10] *Liberty Lobby*, 477 U.S. at 247–48.

[11] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[12] *Scott v. Harris*, 550 U.S. 372, 381 (2007).

claims and hostile work environment claims resulting from sexual harassment, Ms. Wolf's hostile work environment and sexual harassment claims constitute the same Title VII claim.[13] Because "[t]he OADA is analyzed similarly to Title VII claims,"[14] the Court's analysis of Ms. Wolf's Title VII claim applies equally to her OADA claim.

I.   *Plaintiff's Attempts to Create Genuine Disputes of Material Facts*

Ms. Wolf largely disputes Kum & Go's recitation of the facts, but upon closer inspection, these disputes are unsupported by the admissible evidence. First, Ms. Wolf claims that she never received a copy of Kum & Go's Store Associate Handbook to review. However, she admitted in her deposition that she reviewed the handbook as part of her onboarding process,[15] and Kum & Go produced an acknowledgment form electronically signed by Ms. Wolf stating that she read and received the handbook. Ms. Wolf also points out that the acknowledgement form contains signed acknowledgements of twelve other documents, all of which she simultaneously electronically acknowledged. Without more, the fact that these acknowledgments were signed at the same time does not create a genuine dispute over their authenticity, and Ms. Wolf does not allege that her signatures were fabricated.

---

[13] *See Adler v. Wal-Mart Stores*, 144 F.3d 664, 672 (10th Cir. 1998). For the sake of brevity, the Court refers to this claim as Ms. Wolf's hostile work environment claim.

[14] *Jones v. Needham*, 856 F.3d 1284, 1292 (10th Cir. 2017).

[15] Def.'s Mot. (Dkt. 35, Ex. 1), at 34:16–19 ("Q: Now, it sounds like, as you sit here today, you know you would have reviewed the handbook as part of your onboarding process. Right? A: Yes.").

Ms. Wolf also cites a statement from Ms. Butts that Kum & Go "does not give out copies of an employee handbook."[16] This could mean that Kum & Go does not give its employees a copy of the handbook to keep. Indeed, Ms. Wolf testified that she never received a physical copy of the handbook and instead reviewed it on a computer. But even if Ms. Butts's statement were read as expressing her understanding that Kum & Go does not provide copies of its handbook for employees to review, it doesn't undermine Ms. Wolf's admission that she reviewed the handbook and her signed acknowledgement that she reviewed the handbook.

Next, Ms. Wolf claims that Kum & Go has not presented any evidence that it adopted and distributed a valid sexual harassment policy. This is contradicted by Kum & Go's exhibits showing its sexual harassment policy and Ms. Wolf's signed acknowledgment that she read and received the handbook containing that policy. Ms. Wolf argues that the exhibit Kum & Go provided containing the handbook's sexual harassment policy should be ignored because Kum & Go did not provide a complete copy of the handbook, but rather only the relevant excerpt. Ms. Wolf never explains why this is so. But if she is suggesting that some other portions of the handbook would create some dispute as to the validity or existence of the sexual harassment policy, it is incumbent on her to submit evidence creating that dispute.

Ms. Wolf also disputes Kum & Go's assertion that she did not report Mr. Geen's alleged sexual harassment until after she resigned and claims instead that she reported Mr.

---

[16] Pl.'s Resp. (Dkt. 39, Ex. 5), ¶39.

Geen's conduct to Ms. Butts during her employment. In support, she cites Ms. Butts's affidavit stating that she remembered Ms. Wolf telling her Mr. Geen "made her feel uncomfortable."[17]

Kum & Go objects to the admissibility of Ms. Butts's affidavit in general as violating Kum & Go's attorney-client privilege with its counsel. Indeed, the affidavit mostly recounts communications between Ms. Butts and Kum & Go's counsel that occurred while Ms. Butts was employed by Kum & Go, including Ms. Butts's statement that Ms. Wolf said Mr. Geen made her feel uncomfortable. The Court agrees that the portions of Ms. Butts's affidavit describing her communications with Kum & Go's counsel are protected by the attorney-client privilege because they relate to the "rendition of legal services and advice[,]"and the privilege extends to "the giving of information to [an employer's] lawyer to enable him to give sound and informed advice."[18] Although Ms. Butts was no longer employed by Kum & Go when she made the affidavit, most courts have "concluded that the distinction between present and former employees is irrelevant for purposes of the attorney-client privilege."[19] Because this privilege rests with Kum & Go's management, Ms. Butts could not waive the privilege by describing protected communications in her affidavit. Accordingly, Ms. Wolf cannot rely on the portions of Ms.

---

[17] Pl.'s Resp. (Dkt. 39, Ex. 5), ¶30.

[18] *Sprague v. Thorn Ams.*, 129 F.3d 1355, 1370 (10th Cir. 1997) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)).

[19] *Sandra T.E. v. South Berwyn Sch. Dist.* 600 F.3d 612, 621 n.4 (7th Cir. 2010).

Butts's affidavit describing her communications with Kum & Go's counsel to dispute any material fact.

Ms. Wolf argues that, under *United States v. Merida*,[20] the attorney-client privilege rested with Ms. Butts because Kum & Go's counsel represented her individually. *Merida* explains that corporate employees claiming that the corporation's counsel represented them individually must first "show that they approached counsel for the purpose of seeking legal advice."[21] Here, Ms. Butts's affidavit states that Kum & Go's counsel approached her about Ms. Wolf's sexual harassment complaint. There is no indication that Ms. Butts approached Kum & Go's counsel for legal advice, and, therefore, Ms. Wolf cannot claim that Ms. Butts also held the privilege.

Ms. Wolf also claims that she did not resign from her employment with Kum & Go, but instead requested to be transferred to another location. However, Ms. Wolf unambiguously resigned when she sent a text message to Mr. Geen and Ms. Butts on July 12, 2022, stating, "I won't be returning to work."[22] Even Ms. Wolf's response to Kum & Go's motion for summary judgment characterizes this text message as a resignation.[23] Furthermore, Ms. Wolf admitted in deposition that she began applying for other jobs as

---

[20] *United States v. Merida*, 828 F.3d 1203 (10th Cir. 2016).

[21] *Id.* at 1210 (quoting *Intervenor v. United States (In re Grand Jury Subpoenas)*, 144 F.3d 653, 659 (10th Cir. 1998)).

[22] Def.'s Mot. (Dkt. 35) Ex. 8.

[23] Pl.'s Resp. (Dkt. 39), at 6 ("Ultimately, Plaintiff sent a written message of resignation to both Geen and Butts explaining that she could no longer work in that environment because of Geen's behavior.").

early as July 14, 2022, and never applied for a position with Kum & Go at a different location. Accordingly, there is no genuine dispute that Ms. Wolf resigned from her position with Kum & Go on July 12, 2022.

Ms. Wolf disputes that Kum & Go genuinely tried to contact her about the conclusion of the Kum & Go's investigation into her sexual harassment complaint. Ms. Wolf cites Mr. Bollinger's testimony stating he attempted to call Ms. Wolf on July 22, 2022, about the conclusion of Kum & Go's investigation, and she did not pick up his call. Mr. Bollinger further testified that he did not attempt to email or text Ms. Wolf about the investigation thereafter. This was a genuine attempt to contact Ms. Wolf about the conclusion of Kum & Go's investigation. Moreover, it is not material to the Court's analysis whether Kum & Go made further attempts to contact Ms. Wolf about the investigation.

Ms. Wolf also offers screenshots of text message conversations with her then-boyfriend discussing Mr. Geen's alleged inappropriate behavior. Kum & Go argues that these screenshots are not properly authenticated because they were not provided in their native format and Ms. Wolf altered the screenshot by superimposing dates and times and cropping out portions of the messages. Kum & Go also points out that Ms. Wolf deleted the original messages from her phone after meeting with counsel regarding her claims against Kum & Go. The Court need not address the admissibility of these messages, however, because they are not material to the Court's analysis of Plaintiff's claims.

## II. Title VII Hostile Work Environment

It is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."[24] "Title VII's prohibition of employment discrimination based on sex encompasses hostile work environment sexual harassment."[25]

"Under Title VII, harassment is actionable only when it is sufficiently severe or pervasive such that a reasonable person would find the work environment to be hostile or abusive and the employee in fact perceived it to be so."[26] Thus, to establish a prima facie case hostile work environment claim, a plaintiff must show that: "(1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) [due to the harassment's severity or pervasiveness], the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment."[27]

"In general, an employer is directly liable for an employee's unlawful harassment if the employer was negligent with respect to the offensive behavior."[28] To demonstrate

---

[24] 42 U.S.C. § 2000e-2(a)(1).

[25] *Adler*, 144 F.3d at 672.

[26] *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 650 (10th Cir. 2013) (internal quotation marks omitted).

[27] *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1262–63 (10th Cir. 2005) (citing *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 797–98 (10th Cir. 1997)).

[28] *Kramer v. Wasatch Cnty. Sheriff's Off.*, 743 F.3d 726, 737 (10th Cir. 2014) (internal quotation marks omitted).

negligence, "an employee must present enough evidence for a reasonable jury to find that the employer knew or should have known about the harassment but failed to stop it."[29] However, if "the harasser is a supervisor rather than merely a co-worker . . . the employer may be vicariously liable for the conduct, depending on the circumstances. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable for sex discrimination, with no defense."[30] But even "[i]f no tangible employment action occurs, the employer may still be vicariously liable for the supervisor's harassment if the plaintiff proves the harassment was severe or pervasive and the employer is unable to establish the affirmative defense announced in"[31] *Burlington Industries., Inc. v. Ellerth*[32] and *Faragher v. City of Boca Raton*.[33]

The *Faragher/Ellerth* "defense has two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[34] "An employer acts reasonably as a matter of law to prevent sexual harassment if it adopted valid

---

[29] *Debord*, 737 F.3d at 650.

[30] *Kramer*, 743 F.3d at 737 (citation and internal quotation marks omitted).

[31] *Id.*

[32] 524 U.S. 742, 765 (1998).

[33] 524 U.S. 775, 807 (1998).

[34] *Kramer*, 743 F.3d at 745 (citation and internal quotation marks omitted).

sexual harassment policies and distributed those policies to employees[.]"[35] But "an employer's mere promulgation and dissemination of an adequate harassment policy does not, by itself, establish that the employer acted reasonably to remedy any harassment that occurred."[36] The employer must also take prompt, proper action to correct harassment if it occurs.[37] "The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified."[38] Next, an employer may satisfy the second element of the defense by showing that "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[39]

The employer "bears the burden to prove both prongs of the defense by a preponderance of the evidence."[40] "Thus, the employer must prove both it acted reasonably in preventing and correcting harassment and that the victimized employee unreasonably failed to act by not utilizing complaint opportunities."[41] "To win summary judgment on the

---

[35] *Debord*, 737 F.3d at 653; *see also Helm v. Kansas*, 656 F.3d 1277, 1289 (10th Cir. 2011) (holding that an employer "exercised reasonable care to prevent sexual harassment by promulgating an appropriate sexual harassment policy, distributing that policy to all employees . . . requiring employees to acknowledge in writing their understanding of the policies . . . and providing training to managers").

[36] *Helm*, 656 F.3d at 1290.

[37] *See id.*

[38] *Debord*, 737 F.3d at 654 (citations and internal quotation marks omitted).

[39] *Helm*, 656 F.3d at 1285 (citations and internal quotation marks omitted).

[40] *Kramer*, 743 F.3d at 746.

[41] *Id.* (internal quotation marks omitted).

[*Faragher*/*Ellerth*] defense, an employer must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial."[42] "This means the employer must demonstrate the lack of any disputed material fact and that no reasonable jury could decide that the employer failed to act reasonably or that it was reasonable for the victimized employee not to report the alleged harassment."[43]

Here, the undisputed material facts show that Ms. Wolf did not experience a tangible employment action because she voluntarily resigned from her job at Kum & Go. In the Title VII sex discrimination context, a "tangible employment action" is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[44] The Tenth Circuit has noted in *dicta* that an employer could refute a claim of strict vicarious liability for sexual harassment in the workplace "with proof that no negative employment action was taken by the employer, i.e., *that the employee resigned, for example*[.]"[45]

---

[42] *Id.* (internal quotation marks omitted).

[43] *Moon v. Oklahoma Dep't of Corr.*, No. 23-6091, 2024 WL 1696791, 2024 U.S. App. LEXIS 9472, at *4 (10th Cir. Apr. 19, 2024) (citing *Kramer*, 743 F.3d at 746). The Court cites unpublished decisions of the Tenth Circuit for their persuasive value, consistent with Tenth Cir. R. 32.1 and Fed. R. App. P. 32.1.

[44] *Burlington Indus. v. Ellerth*, 524 U.S. 742, 746 (1998).

[45] *Smith v. Cashland, Inc.*, 193 F.3d 1158, 1160 (10th Cir. 1999) (emphasis added). This rule is subject to an exception for cases involving allegations of constructive discharge, that is, "when a reasonable person in the employee's position would view her working conditions as intolerable and would feel that she had no other choice but to quit." *Tran v. Trs. Of the State Colls. In Colo.*, 355 F.3d 1263, 1270–71 (10th Cir. 2004) (internal citations omitted). Ms. Wolf has not alleged that she was constructively discharged from

Although Ms. Wolf argues that she suffered a tangible employment action when Kum & Go decided to not rehire her, she admitted in deposition that she never applied for a position at Kum & Go after her resignation. Ms. Wolf also argues that she suffered a tangible employment action when Mr. Geen entered a disciplinary action in her personnel file regarding her BARS sting failure. However, Ms. Wolf resigned before Mr. Geen entered the disciplinary action, meaning it had no effect on her employment status. Because Ms. Wolf did not experience a tangible employment action, Kum & Go is entitled to present the *Faragher*/*Ellerth* affirmative defense to vicarious liability.

Under the first prong of the affirmative defense, Kum & Go must demonstrate that it exercised reasonable care to prevent and promptly correct any sexually harassing behavior. Regarding the preventive component, Ms. Wolf electronically signed an acknowledgement that she received and read a copy of Kum & Go's Store Associate Handbook and was responsible for obeying the rules and policies therein and admitted in her deposition that she reviewed the handbook as part of her onboarding process.[46] That handbook contained a valid sexual harassment policy.

Moreover, Kum & Go acted promptly to investigate Ms. Wolf's sexual harassment complaint. Again, Ms. Wolf reported Mr. Geen's alleged harassment in her resignation text on July 12, 2022, and in her call to Kum & Go's HR department on July 15, 2022. Mr.

---

her position at Kum & Go. Even if she had, her circumstances were not so intolerable that a reasonable person in her position would feel that she had no choice but to resign.

[46] Def.'s Mot. (Dkt. 35, Ex. 1), at 34:16–19 ("Q: Now, it sounds like, as you sit here today, you know you would have reviewed the handbook as part of your onboarding process. Right? A: Yes.").

Bollinger interviewed Mr. Geen twice between July 19, 2022, and July 22, 2022, regarding Ms. Wolf's complaint. The investigation concluded on July 22, 2022, when Mr. Bollinger attempted to contact Ms. Wolf to inform her that Kum & Go could not substantiate her complaint. These actions constitute reasonable efforts to promptly correct Mr. Geen's alleged harassing behavior.

Turning to the second prong of the *Faragher/Ellerth* defense, Kum & Go must show that Ms. Wolf unreasonably failed to take advantage of any preventive or corrective opportunities provided by Kum & Go or to avoid harm otherwise. Kum & Go claims that Ms. Wolf did not report any incidents of sexual harassment until she called Kum & Go's HR department on July 15, 2022, three days after her resignation. Ms. Wolf claims that she reported Mr. Geen's alleged harassment to Ms. Butts during her employment, citing Ms. Butts's affidavit. As previously explained, this portion of Ms. Butts's affidavit is protected by Kum & Go's attorney-client privilege. But even if the Court were to consider Ms. Butts's statement, this complaint would not trigger Kum & Go's duty to take corrective action because it did not mention or detail any sexually harassing behavior—it merely relayed to Ms. Butts that Mr. Geen made Ms. Wolf "uncomfortable," with no explanation of why that was so.[47]

---

[47] *See Helm v. Kansas*, 656 F.3d 1277, 1290–91 (10th Cir. 2011) (finding that an employer's duty to take corrective action was not triggered by a complaint stating that a supervisor "had done something inappropriate and made [the plaintiff] feel uncomfortable," without any details or mention of sexual harassment).

16

Because Ms. Wolf waited to report Mr. Geen's alleged sexual harassment until she resigned, she unreasonably failed to take advantage of preventative or corrective opportunities.[48] Because Kum & Go has met both prongs of the *Faragher/Ellerth* defense, Kum & Go cannot be vicariously liable for Mr. Geen's alleged harassment. Accordingly, the Court grants Kum & Go's motion for summary judgment as to Ms. Wolf's Title VII hostile work environment claim. Because the Court's analysis of the Title VII claim applies equally to the OADA claim, the Court also grants Kum & Go's motion as to Ms. Wolf's parallel OADA claim.

*Conclusion*

The Court concludes that Kum & Go has carried its burden to "show[] that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law."[49] Therefore, the Court **GRANTS** Kum & Go's Motion for Summary Judgment (Dkt. 35) and **DENIES AS MOOT** the remaining pending motions (Dkts. 47, 48, 49, 51, 64).

**IT IS SO ORDERED** this 7th day of August 2024.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[48] *See McCans v. City of Truth or Consequences*, No. 07-CV-0606 BB/LCS, 2008 WL 11359163, 2008 U.S. Dist. LEXIS 136704, at *5 (D.N.M. Nov. 4, 2008), *aff'd*, 360 F. App'x 964 (10th Cir. 2010) (finding that the plaintiff unreasonably failed to take advantage of preventive or corrective opportunities by "submit[ting] her resignation just ten days after the [employer] began its investigation").

[49] Fed. R. Civ. P. 56(a).